# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:21-cr-2 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| JARRED COTTON, | : | |
| | : | |
| Defendant. | : | |

---

## ORDER DENYING MOTION TO DISMISS INDICTMENT (Doc. 34)

---

This matter is before the Court on Defendant Jarred Cotton's motion to dismiss the

Indictment. (Doc. 34.) The Government filed a memorandum in opposition (Doc. 37) to

the motion, and, on June 17, 2021, the Court held a hearing on the motion. This matter is

thus ripe for review. For the reasons below, the motion to dismiss is **DENIED**.

### FACTS

On February 25, 2021, a federal grand jury returned a one-count indictment against

Mr. Cotton. The indictment charges Mr. Cotton with being a felon in possession of a

firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (2). Specifically, it alleges that Mr.

Cotton, "knowing he had previously been convicted of a crime punishable by

imprisonment for a term exceeding one year, knowingly possessed a firearm, that is, a

Springfield Model XDS, .45 caliber pistol bearing serial number XS659458, and the

firearm was in and affecting commerce." (Doc. 25 at PageID # 61.)

# ANALYSIS

Mr. Cotton is charged pursuant to 18 U.S.C. § 922(g)(1), which states:

(g) It shall be unlawful for any person—
(1) who has been convicted in any court of, a crime punishment by imprisonment for a term exceeding one year;
. . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Mr. Cotton moves to dismiss the indictment, arguing that the Government cannot prove, as a matter of law, that he possessed the firearms "in or affecting commerce," as required by the language of § 922(g)(1). The Government intends to prove this element by showing that, prior to Mr. Cotton's possession of the firearm, it moved in interstate commerce. Mr. Cotton argues that such evidence is insufficient to satisfy the "in or affecting commerce" element under § 922(g)(1) for two reasons.

First, he argues that the statute itself should be construed to require more than the mere possession of a firearm that, at some point in its history, crossed state lines. He asserts that Congress's decision to define possession and receipt crimes differently in the statute compels the conclusion that it did not intend for the possession of a firearm offense to be satisfied by proof that the firearm had been shipped or transported in interstate or foreign commerce, e.g., manufactured in another state.

Second, Mr. Cotton argues that premising criminality liability on the out-of-state manufacture of the firearm does not pass constitutional muster. Specifically, he contends that extending the reach of the possession offense to firearms manufactured in another

state violates the limitations on federal power contained in the Commerce Clause.

Mr. Cotton acknowledges that the Sixth Circuit has already held that Congress does not exceed its power under the Commerce Clause by making it unlawful for a felon to possess a firearm that was manufactured outside the state. (Doc. 34 at PageID # 100, citing *United States v. Sawyers*, 409 F.3d 732, 735-36 (6th Cir. 2005); *United States v. Henry*, 429 F.3d 603, 619-20 (6th Cir. 2005); *United States v. Chesney*, 86 F.3d 564, 571-72 (6th Cir. 1996); *United States v. Fish*, 928 F.2d 185 (6th Cir. 1991).) He does not ask the Court to reject this binding precedent. Rather, he raises his constitutional argument only to preserve the record for appellate review. The Court therefore analyzes only his statutory construction argument here.

Mr. Cotton dedicates a significant portion of his brief to explaining the events leading up to Congress's enactment of 18 U.S.C. § 922. Over the past 80 years, Congress has passed three criminal statutes regulating firearms. First was the Federal Firearms Act of 1938, which prohibited the shipping, transportation, and receipt of firearms, but not possession (though possession constituted presumptive evidence that the firearm was shipped, transported, or received in violation of the act). 52 Stat. 1250, § 2(e, f). Thirty years later, Congress passed the Omnibus Crime Control and Safe Streets Act of 1968. Section 1202 of that act made it a crime to be a felon who "receives, possess, or transports in commerce or affecting commerce . . . any firearm." Title VII of the Omnibus Crime Control and Safe Streets Act of 1986, 18 U.S.C. § 1202. Thus, the act introduced a prohibition against possession—albeit with "little discussion and no hearings." *Scarborough v. United States*, 431 U.S. 563, 569, 97 S. Ct. 1963, 52 L. Ed. 2d 582 (1977). Mr.

Cotton points out that the *Scarborough* Court considered the statute's language "ambiguous at best." (Doc. 34 at PageID # 94, citing *Scarborough*, 431 U.S. at 570.)

Section 1202 was in effect until 1986, when Congress repealed it and enacted the Firearms Owners' Protection Act of 1986. In the place of § 1202, Congress enacted § 922(g), which maintained the "receive," "transport," and "possess" offenses, but slightly changed the text giving effect to those offenses. The statute makes it unlawful for a felon "to [1] ship or transport in interstate or foreign commerce, or [2] possess in or affecting commerce, any firearm or ammunition; or to [3] receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." § 922(g)(1).

Mr. Cotton contends the passage of § 922(g) clarified that possessors can be convicted under the statute only if they "actually possess the gun in or affecting commerce." (Doc. 34 at PageID # 98.) Thus, according to Mr. Cotton, the prohibition against *possession* is only unlawful if the possession itself is "in and affecting commerce." It is not enough, he argues, to possess a firearm that, at some point in the past, was shipped or transported in interstate or foreign commerce. He finds support in the act's title—the Firearms Owners' Protection Act—and references to the Second, Ninth, and Tenth amendments in its congressional findings. *See* Public Law 99-308 (S 49), May 19, 1986, 100 Stat 449.

In response, the Government simply points out that the Supreme Court, in *Scarborough*, held that a minimal nexus between possession and commerce suffices to carry a possession charge. *Scarborough*, 431 U.S. at 577. The Sixth Circuit has reached the same conclusion as it specifically relates to § 922(g)(1)—the statute at issue here—by

4

finding that § 922(g)(1) "does not require a substantial connection to interstate commerce." *United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003). Based on applicable precedent, therefore, the Government maintains that "possession 'in or affecting commerce' merely requires that the firearm had at some point moved in interstate commerce." (Doc. 37 at PageID # 114.)

As this Court decided when presented with the identical issue in *United States v. Rashid*, the Government's position must prevail on the merits. No. 1:20-CR-19, 2020 WL 5126697 (S.D. Ohio Aug. 31, 2020) (McFarland, J.). The repeal of § 1202 and subsequent enactment of § 922(g)(1) did not completely strip *Scarborough* of its precedential value. This is because both § 1202 (which *Scarborough* interpreted) and § 922(g)(1) require the possession to be "in" or "affecting commerce." Therefore, *Scarborough*'s analysis of that language is just as persuasive now as it was when the case was decided.

*Scarborough* concluded that "the purpose of Title VII was to proscribe mere possession." *Scarborough*, 431 U.S. at 575. The Court found "no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* Even with the limited legislative history of § 1202, the Court held that that history "further supports the view that Congress sought to rule broadly" in prohibiting convicted felons from possessing firearms. *Id.* at 572.

Furthermore, the Sixth Circuit has repeatedly held that *Scarborough* applies to § 922(g)(1). *E.g.*, *United States v. Chesney*, 86 F.3d 564, 571 (6th Cir. 1996) ("The Supreme Court has held [in *Scarborough*] that proof that a firearm moved in interstate commerce at any time is sufficient to meet the government's burden of proving the 'in commerce or

5

affecting commerce' element of § 1202(a), the predecessor to § 922(g)(1).") Applying *Scarborough* to § 922(g)(1) makes sense, for two connected reasons. First, the possession elements in § 1202 and § 922(g)(1) are practically identical—§ 1202 reads "in commerce or affecting commerce," while § 922(g)(1) reads "in or affecting commerce." And, second, the Supreme Court decided *Scarborough* as a matter of statutory interpretation. *Chesney*, 86 F.3d at 571. So, with two substantively identical texts and a Supreme Court opinion interpreting one of them, this Court's job is straightforward: it will apply *Scarborough*, which forecloses Mr. Cotton's statutory argument. *See, e.g., Chesney*, 86 F.3d at 570–71; *United States v. Fish*, 928 F.2d 185, 186 (6th Cir. 1991) ("firearms possessed in a state other than the state of manufacture constitute firearms in or affecting commerce"), *abrogated on other grounds by United States v. Ritchey*, 840 F.3d 310, 313 (6th Cir. 2016); *United States v. Chivers*, No. 1:19-CR-119, 2020 WL 4582708, at *1 (S.D. Ohio Aug. 10, 2020) (rejecting the same argument presented here); *United States v. Wendel*, No. 1:19-CR-132, 2020 WL 832098, at *1 (S.D. Ohio Feb. 20, 2020) (same). *See also, e.g., United States v. Corey*, 207 F.3d 84, 88 (1st Cir. 2000); *United States v. Coleman*, 22 F.3d 126, 130 (7th Cir. 1994); *United States v. Gourley*, 835 F.2d 249, 251 (10th Cir. 1987).

Even if it was significant, in this instance, that Congress changed the language concerning the receipt and transportation offenses, it is not clear why that would limit the reach of the possession offense. The "in" and "affecting commerce" element of § 1202 carried over into § 922(g)(1). Thus, on a possession charge under § 922(g)(1), we are bound to treat *Scarborough*'s application of the phrase "in and affecting commerce" as authoritative. Moreover, *Scarborough* held that "Congress sought to reach possessions

broadly, with little concern for when the nexus with commerce occurred." *Scarborough*, 431 U.S. at 577. There is no reason to conclude Congress sought to accomplish anything different for § 922(g)(1).

Here, the Government alleged that the firearm in Mr. Cotton's possession "was in and affecting commerce." (Doc. 61.) The indictment thus alleges the elements of the possession offense. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). Furthermore, precedent of the Supreme Court and the Sixth Circuit forecloses Mr. Cotton's statutory argument. Accordingly, the Court finds that an indictment for possession under § 922(g)(1) is sufficient even when the only connection to commerce is that the firearm was manufactured in another state.

## CONCLUSION

For the reasons above, the Court **DENIES** Mr. Cotton's motion to dismiss the indictment.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND